IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RAMON A. JOYNER, :
: 
        Plaintiff, :
:
    v. :   Civil Action No. 18-451-CFC
:
ADRIAN HAREWOOD, et al., :
:
        Defendants. :

Ramon A. Joyner, James T. Vaughn Correctional Center, Smyrna, Delaware; Pro Se Plaintiff.

Roopa Sabesan, Esquire, White and Williams, Wilmington, Delaware, Counsel for Defendants.

**MEMORANDUM OPINION**

September 4, 2019
Wilmington, Delaware

CONNOLLY, U.S. District Judge:

Plaintiff Ramon A. Joyner ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] He proceeds *pro se* and has been granted leave to proceed in *forma pauperis*. (D.I. 5) The Court screened the Complaint on July 2, 2018 and identified cognizable and non-frivolous clams. (*See* D.I. 10) Defendants move for dismissal and Plaintiff opposes. (D.I. 20, 23, 27, 28) Plaintiff also seeks leave to amend and requests counsel. (D.I. 25) Briefing is complete.

## I. BACKGROUND

Plaintiff was housed at the Howard R. Young Correctional Institution ("HRYCI"), in Wilmington, Delaware, from February 2015 through November 2016. (D.I. 3 at ¶¶ 1, 4) Plaintiff became ill in late 2015, and received a chest x-ray. (*Id.* at ¶ 2) He was administered "TB [tuberculosis] tests" in February 2016 that were "all negative."[2] (*Id.*) Plaintiff was housed in the HRYCI infirmary and then released to population but he continued to have breathing issues, no appetite, and chills. (*Id.* at ¶ 3)

In November 2016, Plaintiff was transferred to the JTVCC, where he explained his health issues to a nurse and was administered a TB test. (*Id.* at ¶ 4) Plaintiff showed Defendant Nurse Diane Kibuuka ("Kibuuka")[3] his arm because it was severely

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] The Complaint provides the date February 2015, but other filings indicate the date is February 2016. (*See* D.I. 23 at 2)

[3] Misspelled by Plaintiff as "Kabuuka."

1

swollen and irritated from the TB test. (*Id.* at ¶ 5) Plaintiff alleges that Kibuuka told Plaintiff that "it was okay" and that Plaintiff "had nothing to worry about." (*Id.*) Plaintiff alleges that in December 2016 an outbreak of TB occurred at the HRYCI where he had been housed. (*Id.* at ¶ 10)

Plaintiff alleges that from November 2016 until April/May 2017, he "progressively got worse, chills, sweats, coughing, breathing issues, weight loss, and no appetite." (*Id.* at ¶ 6) Plaintiff alleges the was seen by Defendant Nurse Practitioner Carla Cooper ("Cooper") who did not detect that Plaintiff was "really sick." (*Id.* at ¶ 7) Plaintiff was also seen by Defendant Dr. Mazur ("Dr. Mazur"), and infectious disease doctor, who told Plaintiff that he had received an e-mail about Plaintiff's x-rays from a year ago and needed to do some tests." (*Id.* at ¶ 8) Plaintiff explained to Dr. Mazur the issue with his arm after the TB test. (*Id.*) Plaintiff alleges that Dr. Mazur told him it was nothing to worry about. (*Id.*) Plaintiff alleges that he was getting worse and none of the treatments were working.[4] (*Id.* at ¶ 9)

In April 2017, it was discovered that Plaintiff had no breath sounds on his right side. (*Id.* at ¶ 11) Plaintiff was rushed to the hospital where he was diagnosed with a collapsed right lung and a severe case of TB that had caused a hole in the right lung. (*Id.*) Plaintiff alleges his condition was due to lack of a timely diagnosis and treatment. (*Id.*) Plaintiff was hospitalized for three months. (*Id.* at ¶ 12) While hospitalized, his right lung was removed. (*Id.*) He was released to the prison infirmary and two months later underwent a second operation due to infection. (*Id.* at ¶¶ 13-14)

---

[4] The Complaint does not describe the "treatments."

Plaintiff "does not understand why" Defendant Connections C.E.O. Matthew Wofford ("Wofford") "did not assure his medical staff are properly trained to notice, diagnosis, and treat the obvious symptoms of TB." (*Id.* at ¶ 15) Plaintiff wrote to Defendant Medical Administrator Adrian[5] Harewood ("Harewood") and questioned the training of the staff who "could not have [failed to] noticed what the medical issue was." (*Id.* at ¶ 16) Finally, Plaintiff alleges that nothing was done to properly diagnose or treat the progressive disease of TB. (*Id.* at ¶ 18) He seeks compensatory and punitive damages as well as injunctive relief.

Defendants[6] move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiff failed to: (1) plausibly show how each medical defendant knew of but ignore substantial risk of harm to Plaintiff; and (2) plead allegations of Wofford's personal involvement. (D.I. 20, 28)

## II. LEGAL STANDARDS

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated

---

[5] Misspelled by Plaintiff as "Andrian."

[6] Dr. Harewood moves to join Defendants' motion to dismiss at Docket Item 20. (D.I. 28) The Court construes Docket Item 28 as Dr. Harewood's motion to dismiss.

3

into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A Rule 12(b)(6) motion maybe granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

Defendants argue that nothing in the Complaint demonstrates an unreasonable delay or denial of care that Plaintiff's treating providers deemed clinically appropriate.

4

They argue that dismissal is appropriate because Plaintiff's complaint is that he received inadequate care to properly diagnose and timely treat his TB.

The legal standard when ruling on Rule 12(b)(6) motions is identical to the standard used when screening a complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). The Court previously reviewed Plaintiff's allegations and found that he stated what appear to be cognizable and non-frivolous claims. (See D.I. 10) Nothing has changed since the Court's ruling.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

The Court has revisited Plaintiff's allegations, liberally construed them as it must, and finds that Plaintiff adequately raises medical needs claims. Plaintiff alleges that, while housed at the HYRCI, he exhibited signs and symptoms of active TB. He was

transferred to the JTVCC and, one month after his transfer, there was an outbreak of TB at HRYCI. According to Plaintiff, he continued to exhibit signs and symptoms of active TB after his transfer to the JTVCC and was told there was nothing to worry about. As alleged, the absence-of-breath sounds in the right lung finally alerted medical personnel that Plaintiff had a medical crisis and ultimately resulted in a three-month hospitalization and the removal of Plaintiff's right lung. These allegations suffice to state claims against Defendants.

In addition, Defendants allege the Complaint does not allege the personal involvement of Wofford as is required to state a claim under § 1983. To the contrary, Plaintiff alleges that Wofford did not ensure that his medical staff was properly trained to notice, diagnose, and treat the obvious symptoms of TB. The Complaint contains similar allegations against Harewood.

"Under Section 1983, a supervisor may be liable for [the] failure to train or supervise [his] employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). To state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train employees amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] c[a]me into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (first alteration in original) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). To prevail, the plaintiff must "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

6

Plaintiff alleges that Wofford and Harewood failed to ensure that medical personnel were properly trained to notice, diagnose, and properly treat TB, all of which resulted in Plaintiff's lengthy hospital stay and the removal of his right lung. The prevalence of TB in prisons is well-known and Plaintiff's allegations, liberally construed, state claims against Wofford and Harewood. As noted by the Centers for Disease control, "[t]he incarcerated population contains a high proportion of people at greater risk for TB than the overall population." *See* https://www.Cdc.gov/tb/topic/populations/correctional/default.htm (last visited Aug. 12, 2019).

Plaintiff's allegations of deliberate indifference to a serious medical need and the failure to train medical personnel to recognize and treat TB offer more than formulaic conclusions and are more than bare assertions. While discovery may show that Defendants acted properly, at this early stage of the litigation, Plaintiff has pled sufficient facts to proceed against them. Therefore, the Court will deny Defendants' motions to dismiss. (D.I. 20, 28) The Court will deny as moot Plaintiff's motion for leave to amend. (D.I. 25)

## IV.    REQUEST FOR COUNSEL

Plaintiff seeks counsel on the grounds that his ability to present his own case is limited; he is unskilled in the law; the issues are complex and beyond his abilities to pursue effective investigation; the case may turn on credibility; medical expert testimony will be necessary; his claim has merit; and an attorney would serve the best interest of justice. (D.I. 21, 25)

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[7] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

Assuming, solely for the purpose of deciding this motion, that Plaintiff's claims have merit in fact and law, several of the *Tabron* factors militate against granting his request for counsel. To date, the filings demonstrate Plaintiff's ability to articulate his

---

[7] *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (§ 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

8

claims and represent himself. In addition, the case is in its early stages. Therefore, at this juncture, the Court will deny Plaintiff's request for counsel without prejudice to renew. Should the need for counsel arise later, one can be sought at that time.

## V. CONCLUSION

Based upon the above discussion, the Court will: (1) deny Defendants' motions to dismiss (D.I. 20, 28); (2) deny as moot Plaintiff's motion for leave to amend (D.I. 25); and (3) deny without prejudice to renew Plaintiff's request for counsel (D.I. 21, 25).

An appropriate order will be entered.